May it please the court, Chase Potter on behalf of the appellants. It's my first time presenting an argument in this court, and it's an honor. This case is about the reach of the automatic stay under the bankruptcy code and stay violations imposed there under. The appellants recognize that, well first of all I want to say that I intend to restrict my argument and focus it on two primary issues unless the court has questions regarding other issues briefed, and that's whether the appellate Toby Neugebauer and his claims against appellants for stay violations fall within the zone of interest for which 11 U.S.C. 362K provides the right to sue for alleged stay violations, and two, whether the bankruptcy court erred by relying on 11 U.S.C. section 105 as an alternative ground in addition to 362K to issue the monetary award in favor of Mr. Neugebauer for the alleged stay violations. At the bankruptcy court and at the district court, both sides cited to this court's opinion in the St. Paul Fire v. Labusan case, and I hope I'm saying that correctly. However, appellants recognize that this court, in that opinion, concluded that a creditor may have standing to pursue a claim for stay violations under section 362K, but in its holding in Labusan, this court also stated to the extent that Labusan's claims are based on their status as owners slash equity holders of the debtor, CTL in that case, then section 362K cannot be invoked. And that's important because that's what we have here. We have the appellee, Mr. Neugebauer, who, make no mistake, it's undisputed, he submitted proofs of claims and alleged to be a creditor at the time of these issues when the stay violations were imposed. However, he also was the defendant in an arbitration action by the appellants who were non-debtors themselves. So you have non-debtors suing non-debtors in this arbitration. Now I think the timing is important, and I know it's in the briefing, but just briefly I'll address it. This arbitration was initially initiated against the appellants by the debtor, and the appellants filed counterclaims against the debtor and also brought in Mr. Neugebauer, the appellee, as a third-party defendant in the arbitration. The bankruptcy case was filed during the pendency of the arbitration proceeding. At that point in time, the actions against the debtor were ceased, and there were actions continuing against the appellee, Mr. Neugebauer, by the appellants. Your Honor. But you'd agree, I guess, that the claim, particularly for breach of fiduciary duty against Mr. Neugebauer, would be owned by the estate at the point of the bankruptcy. Would it not? I believe it would, Your Honor. But you proceeded on the arbitration of those claims as against Neugebauer. You didn't split claims off against him. It was basically claims versus the debtor and claims versus Mr. Neugebauer. That's correct. And the timing, again, is interesting, and I think it's important for this case because there were supplemental claims filed against Mr. Neugebauer by the appellants. And there was a gap in the proceedings while we proceeded on the appellants and the claims. Mr. Neugebauer was proceeding pro se. There was no activity, so to speak, in the arbitration other than trying to get Mr. Neugebauer to engage. Well, you're soaring over his deposition and all those sorts of things, and I think his counsel basically made it clear, we think we're covered by the stay, and you're fighting over the scope of the stay, but you proceeded anyway. Understood, Your Honor. And I'm talking about this is before any of the supplemental claims were filed. Understood. And I recognize that. And those go to the issue of whether or not a stay violation occurred. And I don't mean to sidestep. Okay, so back up, I guess. Wouldn't Mr. Neugebauer have standing, though, to enforce the stay as a creditor? That's what I wanted to get to, and I think that the case law speaks to the question. I think it's important are two things, whether he would have standing to seek to enforce the stay and whether he would have standing to recover damages for stay violations. And I think those are two different things, and the case law supports that. We cite to, and it's obviously just, it's persuasive authority, I believe, because it's factually analogous under both the legal issues presented and the facts. It's the N. Ray Ampol-American case from the bankruptcy court in the Southern District of New York. It was Judge Bernstein in that case, and it was a very similar situation where you had an officer of a company who was seeking to enforce the stay on causes of action that were being pursued against him. And the court says in that case, the fact that someone is a pre-petition creditor is not a foot in the door that allows the creditor to recover damages for injuries suffered to its non-creditor interest. And just like Mr. Neugebauer here, the movements in the Ampol-American case claimed that they would be damaged not because they would receive a smaller distribution on their creditor claims or that their creditor claims would be impacted in any way, but instead because the movements must defend against the claims that were being pursued against them. That's what we have with Mr. Neugebauer here. There's no complaint that somehow being forced to defend himself in that arbitration matter impacted his creditor interest whatsoever. He just- Well, Your Honor, so there are breach of fiduciary duty claims being pursued by the estate against Mr. Neugebauer currently. I'm not sure if that's in the record. But I don't think that impacts the analysis for purposes of whether or not Mr. Neugebauer, this is within the zone of interest that's permitted to recover damages under 362K. And the reason being- Is zone of interest still the salient test after Lexmark? I think that- So Lexmark, I believe, speaks to the issue of where you consider the zone of interest in the analysis. And pre-Lexmark, both in this court's opinion in LaBusan and then also in the NRA-American, Ampol-American case, it was considered as part of the prudential standing requirement. Your Honor, now, based on the Lexmark case, what we see is that the zone of interest analysis instead looks at whether the plaintiff, the claimant in the situation, falls within the class of claimants who has the ability within the zone of interest to be able to pursue damages under 362K. But it absolutely, the zone of interest test, still applies and is important for this analysis. And this court had a subsequent opinion to Lexmark in the Superior MRI Services case. It's cited in our brief. And then also in the Northern District of Texas, where this judgment arose from, there's the NRA Emergency Room Mobile Services case. That one is important because it is post-Lexmark. It was Judge Boyle in that case in the Northern District. And she recognized in the opinion that the Supreme Court recently held that the third prudential standing principle, the zone of interest requirement, does not belong under the prudential standing analysis and is better framed as a question on the merits, whether a particular party has a cause of action under the statute in question. But after recognizing the impact of Lexmark, Judge Boyle still stressed that in order to pursue stay violations under 362K, a creditor must be alleging harm in the creditor's capacity as a creditor, not some other capacity. And how, I mean, you argue that he doesn't have standing to bring this act to enforce the stay and to get damages as a result. But I mean, all this, the facts of the case seem very intertwined. In other words, the claims against him that are asserted by heirs seem very intertwined with the claims held by the debtor and vice versa and et cetera. So how would he not be in the zone of interest, however that's measured? Again, I think it's because the zone of interest focus on what's the alleged harm that Mr. Nagabower personally is claiming in this case. And in this case, the alleged harm was that he was forced to defend himself in that arbitration proceeding while the bankruptcy was proceeding. And therefore, it is an interest of his as a defendant. If it was his as a creditor, he just so happens to be a creditor. And I think the most salient point to make on that issue is Mr. Nagabower would have had those same damages and he would have incurred those same fees if he had not been a creditor in the case. And so he would have had the same alleged harm even if he was not a pre-petition creditor. And Your Honor, it's important, I think, to note that in these type of cases, these chapter seven cases, there's also the trustee as there was in place here who has the ability to, if there is something that is a state claim being pursued, if it's harming creditors as a whole and harming creditor status, that the trustee can move and the trustee can seek to enforce the automatic stay and seek damages on behalf of the estate for the benefit of all creditors. That wasn't done here. That was done instead by Mr. Nagabower. And we believe based on the case law, even post Lexmark and the fact that it may not be the zone of interest test and analysis goes to prudential standing any longer, but it's still a requisite requirement for determining whether or not 362K can be extended and whether or not the person, the move-in under 362K can recover actual damages. So what claims were live again when they sought the deposition and sanctions? All of them were, Your Honor. Okay. What remained live after the agreement with the trustee? After the agreement with the trustee, it was only a few claims. It was defamation, business disparagement, and I believe that may, and fraudulent inducement, I believe. Okay. And you said that was from, for the estate, the fraudulent inducement? Did you? No, Your Honor. That was the, in response to the question on breach of fiduciary duty. Okay. Fraudulent inducement was not for the estate. Judge Larson actually has an opinion in this very matter with respect to fraudulent inducement claims and that they could be personal as opposed to estate-based claims. But there was no attempt to try to make this deposition only for fraudulent inducement? The answer to that question is no, Your Honor. What was the reasoning or thinking behind this? The reasoning was, Your Honor, is that there was an attempt to, again, the circumstances in this case, and as the record reflects, is Mr. Nagenbauer wasn't engaging at all in the process. And so it was a request to get him to, after the appellants obtained a ruling from the arbitrator, stating that it could move forward, the case, to get him to engage and actually to sit for a deposition at all. Right. But it's a big deal to violate a stay. So what was done to protect and try to make sure that they weren't violating the stay? I understand that question, Your Honor, and here's the answer. There were communications between counsel for both parties, Mr. Nagenbauer, or counsel purporting to represent the estate at the time, and eventually Mr. Nagenbauer, and counsel for the appellants. And once there was the issue of, there was a gap, for whatever reason, before Mr. Nagenbauer moved and before this was addressed to the bankruptcy court. But once it was, and the question became, this deposition moves forward. What can move forward? That's when the agreement was reached with the trustee. There was no deposition taken prior to that. But at that point, you'd already noticed the deposition, you'd moved for sanctions before the arbitrator, the arbitrator had compelled the deposition. All that had happened before there was any agreement with the trustee about which claims were live, correct? That's correct, Your Honor. And I mean, you're seeking the arbitrator's blessing, but what does that matter for whether it's violating the bankruptcy court's stay? Understood, Your Honor. Did you seek relief from the bankruptcy court before proceeding with the deposition? That was not done. And did you seek, I mean, my understanding of the record, what I recall, is that the deposition wasn't going to be limited when you noticed it. You just chose the date. I mean, I get it, you had a deponent that was not giving you a date, and the lawyer wasn't calling you back, and all that sort of thing. In normal litigation, I probably would have noticed the deposition and said, proceeded the way you did. But there's a stay, an automatic bankruptcy stay, and you proceeded anyway, and the only blessing you got for that was from the arbitrator. Understood. No factual response that differs from that, Your Honor. Well, no factual response, then how's that not a violation of the stay? Well, again, I think the timing is important because there were activities going on, but at the point in time whenever anything actually happened in the arbitration, there was an agreement we reached with the trustee and the only thing . . . No, no. You're noticing depositions, you're doing . . . it doesn't matter that you all showed up and the arbitrator was there, or you had a hearing, or . . . it doesn't have to be a formal action. You have to stop litigating, period. Understood. Unilaterally. Isn't that right? I believe if the stay is in place, and it's a constitution of a violation of the stay, then yes, that is correct. I don't think, Your Honor . . . But I don't think that changes the analysis with respect to the issue of whether or not under the zone of interest, Mr. Nagevar has the right and the ability to recover damages. And then just very briefly, so I have . . . I get that's a separate issue, but what I'm hearing from you is that if we determine he has standing, you lose. Well, and it's a high burden, no question, it would be a clear error by Judge Larson in her factual determination with respect to that. But we think it weighs so heavily with respect to the law on the zone of interest and the inability for him to be able to recover that he shouldn't be able to do so. Very quickly on 105, before I can see the remainder of my time for rebuttal, we believe that the case law that is cited by the appellee in support of this alternative right under 105 to issue sanctions, all of those cases involve an award for the trustee and damages to the estate. And so we think that's a critical distinction here whereby there have to be some guardrails. If he doesn't have the ability to recover under 362K, shouldn't be able to circumvent that through 105 to be able to create a cause and a right that otherwise doesn't exist. And I'll concede my very short remainder for a rebuttal. Thank you. Thank you. Mr. Downton. Ryan Downton on behalf of Appellee Toby Noggenbauer. May it please the Court. I believe appellants are basically conceding the issue of the state violation. They focused their argument on standing. So unless the Court has other questions, I'm going to take my argument in the same direction. Standing, you've got the question of Article III standing and then prudential standing. I don't believe they're questioning Article III standing. There is an injury traceable to the defendants incapable of redress. So with prudential standing, you start with this court in St. Paul Fire where it looked at the zone of interest, whether it's a generalized grievance really appropriate for Congress and whether the plaintiff is asserting his own legal rights. But then, of course, we have Lexmark. And Lexmark changed the jurisprudence dramatically. Zone of interest is no longer something you look at when looking at standing. You look at the statute. You look at what the words are that Congress enacted into law and you look at their plain meaning. Here 362K says, except as provided in paragraph two. And paragraph two has to do with individual debtors and limits awards to actual damages, which is all that we're awarded here. Paragraph two is not relevant. So 362K says an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees. And then it talks about punitive damages, which aren't relevant here. So the plain text of the statute says that any individual injured by a willful violation of the stay, which they've conceded, shall recover actual damages, including costs and attorney's fees. And that's what happened here. Do we need to rule on the question about whether Lexmark affects the ability to bring suit under 362K? Do you need to? No. I think it is interesting for the court to explore. It may end up being dicta. But I do think 362K is very clear. It talks about individuals injured. It doesn't say a debtor. It doesn't say a creditor. It says an individual. How is he injured? He was injured by violation of the stay because he was forced to both defend in the arbitration and then come to the bankruptcy court and seek. Is that injury in any way related to him being a creditor? It is.  He has identification rights, which he had asserted. And so he is a creditor, well, he's a creditor in multiple ways. He filed claims for money he had loaned the company, but he also asserted a claim as a creditor for his identification rights. And therefore every dollar that he spent defending himself in the arbitration is a claim against the estate. In the case out of New York, the emergency room. He's fully indemnified by the estate for everything? For his bad acts, if he has any? He is indemnified for the cost of his defense. And then depending on what, if there are any bad acts, it depends on the circumstances of those bad acts. If he harmed someone through negligence, then he is indemnified. There are, of course, there are areas where you would not be indemnified, but cost of defense is a standard identification provision offered to officers. Even if he's just avoiding participating in normal, proper discovery? Well, the element- We have to talk about whether it's normal, proper discovery, but if he were? Well, I think you've got to start with the normal, proper discovery. When the estate was in place with the bankruptcy court, it was not normal, proper discovery. But are you saying he would otherwise have been indemnified? He would be indemnified for his reasonable cost of defending a case against him for allegations related to the company. Including the fraudulent inducement? I believe his indemnification agreement with the company was quite broad and could cover that. But now, I think where you're getting into is to the extent of the damages. Not the question of standing, not whether there is violation, but the extent of his damages. The bankruptcy court looked at that in detail, and the bankruptcy court recognized, for instance, that appellants could not be held liable for the cost that would have been inevitably occurred. So if there is a true debate over what claims the appellants own versus what claims the trustee owned, and that was going to be debated in the bankruptcy court, he wouldn't award fees for that. And here, the bankruptcy court looked at that and other factors and reduced the amount of fees sought by approximately, I think it was a little more than 50%. And so the bankruptcy court already did that work. And I don't think it has been challenged on appeal in a sufficient manner for the court to go any further than say the bankruptcy court looked at the relevant factors. The bankruptcy court dramatically reduced the fees that were awarded. And the only challenge brought to this court was simply repeating all of the arguments that appellant made to the bankruptcy court originally, which is why the bankruptcy court reduced the fees. There are no more detailed explanation of how the bankruptcy court did not reduce the fees enough. Appellants asked, does Mr. Nageva have standing to enforce the stay? And that's a very different thing than whether he is standing to recover damages. I don't think we agree with them on that. If you're looking at the zone of interest in any way connected to the purpose of the statute, the purpose of the code, anyone who is a person of interest under the code that has the right to enforce the stay, that's a very different thing. And they don't seem to be denying that Mr. Nageva had the right to come in and say, I should not have to sit for a deposition concerning an estate cause of action for breach of fiduciary duty. If he had the right to come to the court and make that request, then it's hard for me to understand how he is not an individual under 362K within the zone of interest considered by the statute. Even though that's not standing, it does come into play when you're looking at the meaning of the statute. Can you help me again with something you've already tried to help me with? I'm sorry, I need a lot of help. The trustee's agreement in line with your friend on the other side's position seems to point to the fraudulent inducement not being stayed or shouldn't have been stayed. And then the bankruptcy court itself acknowledged that and said it wouldn't belong to the bankruptcy estate. So how does that fit in with, oh, well, we're going to be indemnified so it's all on the same thing? And so it seems like that claim perhaps could have proceeded. If they had withdrawn the other claims and said all we want to do is take a deposition on the fraudulent inducement claim, which is personal to appellants. I don't know they would have to withdraw them. They just would say we're not going to touch on those at this time. That's fair, Your Honor. If they had limited the deposition to only the claims that were personal to the appellants and not... So they could have had a deposition at this time, as long as it was limited. And how do we know it wasn't going to be limited if they would actually return each other's calls and deal with one another? So I don't think they could have just had a deposition. I think they would have had to, because the parties to the arbitration were the entity, the estate that initiated it, Mr. Nagebauer and Mr. Ayers. They could have moved to sever the claims against Mr. Nagebauer and proceeded and eventually the bankruptcy court issued a ruling allowing them to move forward that way. But to proceed with a deposition of a party to an arbitration while another party to the arbitration has protections of a stay, I don't think is proper. The trustee had no duty to appear at a deposition, but the trustee is a party to the arbitration. How can you move forward with a deposition while excluding a necessary party? I've never seen that. I've never seen that in a court case. I've never seen that in an arbitration. To me, the proper way to do it would be to sever off the claims and then proceed. Or just go to the bankruptcy court and have them lift a stay and ask to just cleanly. They can do that in 30 minutes while you're waiting with the jury in state court to try your case. When there's an adversary proceeding that's waiting and they file a stay, right? When you've got your jury in the box. So that you can get a lifting of the stay pretty quickly. Yes, Your Honor. And in this case, they did eventually work with the trustee and they did come to a agreement as to what could proceed. But that was after all of these damages were incurred. And they were not fighting over the extent of what was estate property and what was personal property. I think they quickly recognized that a breach of fiduciary duty claim is estate property. They can't bring it. I'm not sure why it took them the six months it did to reach that agreement with the trustee. But no one's contended that. Are you relying on the 105 powers here? I think they're a... Are you really? Well, the court did as a backup. I don't think it's necessary. I think 362K is plainly sufficient. But the bankruptcy court has broad powers under 105. Those powers cannot be used to punish. And based on the appellate record before this court, the other bases by which appellant may have challenged whether the 105 ruling was proper, I'll say that hasn't been briefed. The bad faith requirement hasn't been briefed? I don't believe that was raised at the lower court. But you agree that bad faith is required at the very least. And it might not be a proper inherent power. Yes, I recognize there are a number of limitations on 105. But in the record before us here, I don't believe they've been briefed. That said, 362K, I think there is standing, and that supports what the bankruptcy court did. And so we don't really need to get into 105, and they didn't particularly in their argument. With that, I will cede my time unless there are questions. Thank you. Mr. Potter, you save time for rebuttal. Thank you. I'll be very brief. I recognize the court's statements. Things could have been done differently here. No question. And there are, this case, this overall bankruptcy proceeding, has a rich and strange history with stay violations. Just last week, Mr. Nagelbauer, the appellee, was sanctioned for stay violations in this very case. And so I don't think, though, that changes the analysis from the legal points at issue here as to whether 362K, hey, if it's because there's no, I've heard still no, and I don't see any in the briefing, argument that Mr. Nagelbauer was doing anything other than protecting himself and his capacity as a defendant and the arbitration, as opposed to his status as a creditor. And again, the trustee has the ability to move under the stay and to seek damages. And one case I did want to draw the court's attention to is, it's cited in the appellee's brief in Section 105, the portion about the alternative grounds, and it's the NRAE-MD Promenade case. And I think that's interesting because that is a case where a creditor moved to enforce the stay, and ultimately the court determined to award damages under 105A, but to award them to the trustee and to the estate. And I think that that's the important distinction here. I think there's no problem with a 105 award in favor of the trustee for a violation of the bankruptcy code to the benefit of the estate, but not a creditor who's not moving in their creditor capacity, unless the court has any other questions. No, thank you. Thank you for your arguments today. We appreciate both counsel's candor with the court and the cases submitted.